IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JASON STIER, on behalf of himself and others similarly situated, § § § | |
| Plaintiff § § | NO. 4:15-CV-00519 |
| vs. § § | |
| GREAT PLAINS NATIONAL BANK, § § | |
| Defendant. § § § | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION

Defendant, Great Plains National Bank ("Great Plains") hereby files its Response in Opposition to Plaintiff's Motion for Conditional Class Certification and states as follows:[1]

**I.    INTRODUCTION**

The only substantive question raised by Plaintiff's Motion is whether this Court should assist him in giving notice of this case to other present and former employees of Great Plains and inviting them to opt-in if they so choose.  The Supreme Court has placed this decision within the sound discretion of the district court. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

> Even at the notice stage, conditional certification "should be denied if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice."  The fundamental inquiry is whether the [plaintiff shows] "some identifiable facts or legal nexus that bind the claims so that hearing the cases together promotes judicial efficiency."

---

[1] As Defendant submits that the Court should not order Court-supervised notice because conditional certification is unwarranted, any argument regarding the terms of such notice should be moot and are certainly premature. In the event the Court orders conditional certification, Defendant reserves the right to file objections to Plaintiff's proposed notice.

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CONDITIONAL CLASS CERTIFICATION - 1

*Kelly v. Healthcare Servs. Group*, No. 2:13-cv-00441, 2013 U.S. Dist. LEXIS 149204, 5-6 (E.D. Tex. Oct. 16, 2013) (quoting *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-00738, 2012 U.S. Dist. LEXIS 12911 at *2 (S.D. Tex. Feb. 2, 2012) and citing *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010)). Here, Plaintiff does not even allege his job duties are similar to the job duties of the proposed class or that all Mortgage Loan Officers ("MLOs") are subject to the same pay policy or practice.

Plaintiff's claims are numerous and complex, including allegations that Great Plains: (1) improperly treated him as exempt from overtime compensation; (2) failed to properly record actual hours worked; (3) failed to pay overtime pay for hours worked in excess of forty hours per workweek; and (4) failed to include all compensation earned in calculating the regular rate of pay. If conditional certification is granted and the class remains certified through the time of trial, Great Plains will be entitled to a jury finding as to whether each class member was subjected to each of the alleged infractions and whether any of the multiple defenses asserted by Great Plains apply to each class member. And if the jury decides Great Plains is liable for any of the alleged infractions, the jury must then determine the number of overtime hours and the offsets against damages for each class member for each week of employment with Great Plains during the relevant time frame.

Plaintiff seeks to represent "All persons who worked as a Mortgage Loan Officer (or persons with similar job duties) for Defendant within three years prior to filing of this Complaint." (Doc. No. 19, p.5). Crucially, Plaintiff was a **Sales Manager**, not a MLO, for the majority of his employment with Great Plains. Unlike most (but not all) MLOs, he supervised employees and was responsible for training MLOs. And as explained herein, this significant difference is just the tip of the iceberg. There are additional key factual differences amongst the

MLOs that make certification inappropriate. These differences are neither theoretical nor inconsequential. Instead, these differences impact whether each putative class member has a viable claim. The following differences amongst MLOs have already been established:

- Not all MLOs are classified as exempt under the FLSA
- For the MLOs who are classified as exempt, their day-to-day job duties must be examined to determine whether an exemption to the FLSA applies.
- For those employees where the Outside Sales Exemption applies, the fact finder will have to determine:
    - Whether the employee's primary duty is making sales, and
    - Whether the employee customarily and regularly engaged in sales-related activities away from the employer's place of business.
- For those employees where the Executive Exemption applies, the fact finder will have to determine:
    - Whether the employee was paid a salary of at least $455 per week;
    - Whether the employee's primary duty is the management of the enterprise or of a customarily recognized department or subdivision thereof; and
    - Whether the employee supervised two or more employees.
- For MLOs who are classified or deemed as non-exempt, the fact-finder will have to determine:
    - Whether the individual worked more than forty hours in a workweek;
    - Whether the individual was required or permitted to work off-the-clock;
    - Whether the individual received overtime compensation;
    - Whether overtime was properly calculated; and
    - How many hours, during the relevant time period, the employee worked.

Rather than explain how the Court can manage the complexities in this case, Plaintiff seeks to persuade the Court that it can take the seemingly easy way out by ruling on Plaintiff's motion without considering all of the evidence. However, based on the evidence obtained thus far, it is already apparent that this case cannot proceed to trial as a collective action because it would be unmanageable. Further discovery will not eliminate the significant disparities among the putative class members, the numerous individualized defenses available to Great Plains, or

the fairness and procedural difficulties that make clear the proposed class would be unmanageable.

## II.     STATEMENT OF FACTS

### A.     Great Plains National Bank

Great Plains National Bank is a full service bank offering personal banking solutions including checking, savings, loan, and mortgage services.  Ex. A, Declaration of Lee Dean ("Dean Decl."), ¶3.  Great Plains has fourteen branches located throughout Southwest and Central Oklahoma. *Id*.  Great Plains includes a Mortgage Division headquartered in Oklahoma City, which lends in all 50 states. *Id*.  Great Plains' Mortgage Division included loan production offices in California, Florida, Georgia, Maryland, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, and Texas during the relevant time period. *Id*.

> Great Plains prohibits off-the-clock work.  Section 401 of Great Plains' handbook states:
>
> Accurately recording time worked is the responsibility of every Non-Exempt employee . . . .
>
> . . .
>
> Altering, falsifying, tampering with time records, or recording time on another employee's time record may result in disciplinary action, up to and including termination of employment.
>
> . . .
>
> It is the employees' responsibility to verify the accuracy of their time record and sign it electronically. If corrections or modifications are made to the time record, both the employee and the supervisor must verify the accuracy of the changes by electronically approving the time record.

Ex. B, Declaration of Kristi Komer-Jones ("Komer-Jones Decl."), ¶7, Ex. B-2, Handbook, p. 45.

Great Plains requires its employees to report all hours worked using a time recording and payroll system called Paycom.  Ex. B, Komer-Jones Decl., ¶¶5, 6; Ex. B-1, MLO Salary and Commissions Acknowledgement ("Non-exempt employees must log all hours worked, inside

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CONDITIONAL CLASS CERTIFICATION - 4

and outside the bank's facilities, by clocking in and out through Paycom."). Every pay period, an email is sent to employees reminding them to review their time records and submit any time adjustments and missed time punches to a Payroll Clerk. Ex. C, Declaration of Aimee Dauphin ("Dauphin Decl."), ¶20; Ex. D, Declaration of Chris Barnes ("Barnes Decl."), ¶14. In addition, every pay period after the requested adjustments are made, employees receive another email reminding them to review and approve their time records in Paycom. Ex. E, Declaration of Keith Gray ("Gray Decl."), ¶17; Ex. C, Dauphin Decl., ¶20; Ex. D, Barnes Decl., ¶14.

B.   **Mortgage Loan Originators**[2]

Great Plains' Mortgage Division employs MLOs in its loan production offices. MLOs generally report to the Branch Manager or Sales Manager. Ex. A, Dean Decl., ¶4. As indicated in the sworn statements submitted by Plaintiff, the primary duty of a MLO is "selling financial products in the form of mortgage products to customers." [Doc. No. 19-1, Exhibits A-G]. How MLOs carry out this responsibility and the amount of time MLOs spend outside the office varies widely from individual to individual depending on a number of factors including, but not limited to: the season (slow season versus busy season); the type of loan product that they are directly marketing (some specialize in refinance, some in new purchases and some are blended); whether they have an administrative assistant; the type of customer; the individual's supervisor and the number and type of referral sources. Ex. D, Barnes Decl., ¶7; Ex. C, Dauphin Decl., ¶7; Ex. F, Park Decl., ¶3 ; Ex. E, Gray Decl., ¶10; Ex. G, Smith Decl., ¶7-10; Ex. B, Komer-Jones Decl., ¶11; Ex. B-4, Great Plains MLO Job Description. Some MLOs generate business through realtor referrals, homebuilder referrals and previous customer referrals. Some MLOs, on the other hand, generate business by fielding incoming phone calls generated by a lead generation service. Ex. F,

---

[2] Defendant uses "Mortgage Loan Originators" and "Mortgage Loan Officers" interchangeably. Ex. A, Dean Decl., ¶5.

Declaration of Doug Park ("Park Decl."), ¶3. Further, some MLOs have additional duties, including supervisory responsibilities, to those listed above. Ex C, Dauphin Decl., ¶12; Ex. G, Smith Decl., ¶10.

Some MLOs spend 90% or more of their time outside the office engaged in selling or sales-related activities. Ex. A, Dean Decl., ¶7; Ex. D, Barnes Dec., ¶6. Others, for example MLOs who rely primarily on a lead service to generate business, spend more time inside the office on sales and sales-related activities. Ex A, Dean Decl., ¶8.

### C. Plaintiff's Employment

Plaintiff was hired by Great Plains as a Sales Manager/Loan Officer in Oklahoma City, Oklahoma on January 27, 2011. Ex. B, Komer-Jones Decl., ¶14; Ex. B-5, Employment Agreement for Jason Stier. Plaintiff was paid on a salaried, exempt basis and, beginning in May 2012, Plaintiff was paid on a salaried, non-exempt basis. Ex. B, Komer-Jones Decl., ¶15. Plaintiff admits his "primary job duty was selling financial products in the form of mortgage products to customers." [Doc. No. 19-1, Exhibit E]. In order to perform this duty, Plaintiff was required to spend a significant amount of time outside of the office calling on realtors, builders, clients, and attending open houses. Ex. A, Dean Decl., ¶9; Ex. F, Park Decl., ¶7. Plaintiff also supervised other MLOs in the Oklahoma City, Austin and Western Oklahoma offices. Ex. A, Dean Decl., ¶9; Ex. F, Park Decl., ¶7. He was responsible for making recommendations for hiring and firing and supervised the other MLOs' day to day work, including training, coaching, and disciplining. Ex. A, Dean Decl., ¶9. During the time of Plaintiff's employment, there was no one who held a similar position or had similar job duties as Plaintiff. Park Decl., ¶7; Ex. A, Dean Decl., ¶10.

Plaintiff voluntarily resigned from Great Plains on March 12, 2013. Ex. B, Komer-Jones

Decl., ¶16; Ex. B-6, Great Plaints National Bank Termination Form.

### D.  Opt-in Plaintiffs

Plaintiff has identified six[3] other former Great Plains employees who he claims are similarly situated to him. Plaintiff attached declarations from these opt-in plaintiffs, which are nearly identical. [Doc. No. 19-1, Exhibits A-G]. Some of these statements are only partially correct, correct for only some MLOs, but not others, or incorrect. The declarations also show that there were differences in the way the opt-in plaintiffs were paid; while some were paid on a commission basis with a draw against the commission, others were paid on a commission basis and hourly wage. *Id.* Additionally, the sworn statements submitted by Plaintiff are contradicted by Great Plains' business records. Plaintiff, Gary DiFilippo, Michael G. LeVanis, II, and Freddie Vanover, Jr. claim, ***under penalty of perjury***, that they were "not paid any overtime premium for hours worked in excess of forty per workweek." [Doc, No. 19-1, Exhibits B, C, E and G]. These individuals did, in fact, report overtime and received overtime pay for hours worked in excess of 40 hours per workweek. Ex. B, Komer-Jones Decl., ¶17-20; Ex. B-7-B-10, Paycom Records. Notably, none of the opt-in plaintiffs have the same job title of Sales Manager/Loan Officer as Plaintiff and none claim they had same the job duties as Plaintiff, such as supervising other MLOs. [Doc. No. 19-1, Exhibits A-G].

### E.  Others in Putative Class

Besides the differences identified among the opt-in plaintiffs, there are further differences in job duties and pay practices among the putative class. For example, some of the members of the putative class have supervisory duties like Plaintiff, while others do not. Ex. A, Dean Decl., ¶9; Ex. F, Park Decl., ¶3. Aimee Dauphin, an MLO in Tuttle, OK, supervises a Loan Assistant and Loan Processor and Rhonda Smith, a Senior Vice President MLO in Elk City, OK,

---

[3] Plaintiff incorrectly states there are seven opt-in plaintiffs in addition to Plaintiff Stier. [Doc. No. 19, p. 2].

supervises a Mortgage Loan Assistant. Ex. C, Dauphin Decl., ¶12; Ex. G, Smith Decl., ¶10. On the other hand, Chris Barnes, a MLO in Oklahoma City, OK, and Keith Gray, a MLO in Hobart, OK, do not supervise any employees. Ex. D, Barnes Decl., ¶8; Ex. E, Gray Decl., ¶12.

There are also differences in the job duties of the MLOs and the amount of time they spend away from the office. For example, Ms. Dauphin spends 15 to 20 hours a week meeting clients outside of the office and another 3 hours a week networking outside of the office. Ex. C, Dauphin Decl., ¶¶4, 6. Ms. Smith, however, spends approximately 8 to 11 hours a week in sales-related activities outside of the office. Ex. G, Smith Decl., ¶6. Mr. Barnes spends 90% of his time on sales-related activities outside of the office. Ex. D, Barnes Decl., ¶6. Unlike Ms. Dauphin, Ms. Smith, Mr. Barnes, and Plaintiff, Mr. Gray is the only Nationwide Mortgage Licensing System officer in his area and he rarely works outside of the office to engage in sales related activities. Ex. E, Gray Decl., ¶¶7, 10. Also unlike the others, Mr. Gray provides lending services in addition to mortgage lending, manages a loan portfolio, monitors and manages loan exceptions, sells commercial real estate loans, farm real estate loans, vehicle loans, operates lines of credit, personal consumer loans, gap insurance and credit life insurance. Ex. E, Gray Decl., ¶¶4-6.

There are also differences in the way the other members of the proposed putative class are paid. Ms. Dauphin is paid a salary which is broken down into an hourly rate plus commissions and she receives a guarantee plus overtime pay. Ex. C, Dauphin Decl., ¶¶10-11. Ms. Smith is paid on a salary plus commission basis and does not receive overtime payments while Mr. Barnes is paid on an hourly basis plus commission and receives a guarantee of forty hours per week. Ex. G, Smith Decl., ¶¶12,13; Ex. D, Barnes Decl., ¶9. On the other hand, Mr. Gray is paid on a salary basis. Ex. E, Gray Decl., ¶13.

### III. LEGAL STANDARD

The FLSA does not *require* certification of collective actions pursuant to § 216(b). *Harris v. FFE Transp. Servs. Inc.*, No. 3:05-CV-00777-P, 2006 U.S. Dist. LEXIS 51437, at *5 (N.D. Tex. May 15, 2006). Rather, the FLSA simply permits an individual to bring an action for unpaid overtime on behalf of himself "and other employees similarly situated." 29 U.S.C. § 216(b). Whether the Court elects to intervene is a matter committed to the Court's sound discretion. In *Hoffman-La Roche, Inc. v. Sperling*, the Supreme Court held that district courts "have discretion, *in appropriate cases* to implement" the collective action mechanism under § 216(b) "by facilitating notice to potential plaintiffs." 493 U.S. 165, 169 (1989) (emphasis added). Court-facilitated notice "is by no means mandatory;" rather, "the relevant inquiry in each particular case is whether it would be appropriate to exercise such discretion." *FFE Transp. Servs. Inc.*, 2006 U.S. Dist. LEXIS 51437 at *6.

While the Fifth Circuit has declined to adopt a specific test to determine when a court should certify a Section 216(b) collective action, most courts have adopted the *Lusardi* test. *See Tice v. AOC Senior Home Health Corp.*, No. 4:10- CV-400, 2011 WL 4591945, at *3–5 (E.D. Tex. Sept. 30, 2011); *Nelson v. Am. Standard, Inc.*, No. 2:07-CV-010, 2008 WL 906324, at *2–3 (E.D. Tex. Mar. 31, 2008) ("[T]he *Lusardi* two-step approach is the prevailing test among federal courts and is the one that the court will apply in this case."). Under the *Lusardi* test, a two-stage analysis is employed to determine whether potential plaintiffs are "similarly situated" for purposes of a collective action under Section 216(b). *Tice*, 2011 WL 4591945, at *4.

The two stages are: (1) the notice stage; and (2) the merits stage.[4] *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), overruled on other grounds. At the notice stage, a

---

[4] At the merits stage, the court re-examines the class after notice, time for opting-in, and discovery have taken place. If it finds the class is no longer made up of similarly situated persons, it may decertify the class. *See Mooney*, 54 F.3d at 1214.

court must determine if the plaintiff has provided sufficient evidence that similarly-situated persons exist. *Id.* The relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same payment practices as the named plaintiffs. *Allen v. McWane, Inc.*, No. 2:06-CV-158, 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006). While this first stage is more lenient, Plaintiff must nonetheless present "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n. 8 (quoting *Sperling v. Hoffman–La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J.), aff 'd in part and appeal dismissed in part, 862 F.2d 439 (3d Cir.1988), aff 'd, *Hoffmann–LaRoche, Inc.*, 493 U.S. 165.); *see also Larsen v. Crème de la Crème, Inc.*, No. 4:09–CV–613, 2011 WL 335171, at *2 (E.D. Tex. January 26, 2011) (holding "[w]hile the *Lusardi* certification standard is lenient, it is not automatic."); *Mims v. Carrier Corp.*, No. 2:06-CV-206, 2008 WL 906335, at *3 (E.D. Tex. Mar. 31, 2008) (while the first stage of *Lusardi* is fairly lenient, it must still be based on competent evidence in order to avoid allowing unwarranted litigation).

IV. **CONDITIONAL CERTIFICATION SHOULD BE DENIED**

    A. **There is No Common Illegal Policy**

Regardless of the standard applied to Plaintiff's Motion, Notice is only appropriate when there is "a demonstrated similarity among the individual situations [and] . . . some factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged [policy or practice]." *Harris*, 2006 U.S. Dist. LEXIS 51437, at *13 (citing *Clarke v. Convergys Customer Mgmt. Group, Inc.*, 370 F. Supp. 2d 601, 605 (S.D. Tex. 2005)).

Plaintiff alleges he was treated as an exempt employee, worked off-the-clock, was not paid for the actual number of hours he worked and "was not paid any overtime premium for hours worked in excess of forty per workweek." Plaintiff does not even allege (must less provide any factual support) that all of the putative class members had the same job duties or

were similarly treated as exempt. Moreover, Plaintiff does not claim the alleged practice of failing to pay overtime applies to all of the putative class members he seeks to represent. Plaintiff's sworn statement claims the same alleged practice applies to only four of the putative class members and his Complaint merely alleges that "similarly situated" individuals (**not all MLOs**) were subjected to the same practice. [Doc. No. 19-1, Exhibit E, ¶6; Doc. No. 19, p. 5].

While Plaintiff and the opt-in plaintiffs state they observed other employees who were subject to the same allegedly unlawful policies and practices, they have not provided anything more. Allegations that "simply state that they believe other workers were discriminated against in similar ways . . . [do] not satisfy the movant's [Rule] 216(b) burden." *Harris*, 2006 U.S. Dist. LEXIS 51437, at *13 (citing *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)). Plaintiff failed to offer anything more than conclusory allegations and has not demonstrated any factual nexus that binds the claims under a single policy.

In contrast, Plaintiff's own evidence demonstrates that putative class members are subject to a *lawful* policy that requires MLOs to report actual hours worked. [Doc. No. 19-1, Exhibit H, p. 12, ("All employees must punch in and out in the bank's daily timekeeping system (Paycom).")]. Supplemental evidence attached herein, further demonstrates that Plaintiff and the putative class members were subject to a common policy that is *lawful*. Ex. C, Dauphin Decl., ¶20; Ex. D, Barnes Decl., ¶14; Ex. E, Gray Decl., ¶17; Ex. F, Park Decl., ¶¶8-9. In addition to the handbook policy recited above, Great Plains' sent constant emails to employees reminding them to report their actual hours worked and required employees to review and approve time records in order to receive a paycheck. Moreover, putative class members testified that they are required to report all hours worked, regularly report all hours worked and regularly receive overtime pay for hours worked in excess of forty hours in a workweek. Ex. C, Dauphin Decl.,

¶20; Ex. D, Barnes Decl., ¶14; Ex. E, Gray Decl., ¶17; Ex. F, Park Decl., ¶¶8-9. If Plaintiff worked off-the-clock it was certainly not pursuant to a company-wide policy and could only have occurred because his supervisor required or permitted him to violate company policy. Ex. B, Komer-Jones Decl., ¶8. Because there is no common policy or practice that applies to all putative class members, an individualized analysis must be conducted in order to determine whether each and every putative class member worked off-the-clock.[5]

It is clear, even at this early stage, that Plaintiff cannot present his off-the-clock claims on behalf of the putative class members through representative evidence. If this case proceeds in a collective fashion, the fact finder will necessarily have to examine: (1) whether each class member worked more than forty hours in a workweek; (2) whether each class member's supervisor required or permitted them to violate the Company policy prohibiting off-the-clock work; (3) whether each class member who was not required by a rogue supervisor to violate company policy ignored company policy; (4) whether each class member received overtime pay and (5) whether the overtime pay for each class member was properly calculated. Such individual determinations are incompatible with the congressional objectives of a Section 216(b) collective action.

### B. Plaintiff's Misclassification Claims Require Individualized Analysis

Even if there was a common illegal policy that applied to Plaintiff and the putative class, Plaintiff cannot proceed in a collective action because Great Plains asserts defenses that will require individualized analysis for Plaintiff and each of the putative class members. Great Plains asserts that even if Plaintiff failed to report all hours worked, Plaintiff was not entitled to overtime pay because at least two exemptions to the FLSA's overtime requirements apply to

---

[5] Plaintiff further differs from the putative class members in that he claims he was never paid overtime and many MLOs regularly report more than 40 hours in a workweek and receive overtime pay. Ex. D, Barnes Decl., ¶¶10,11; Ex. C, Dauphin Decl., ¶21; Ex. B, Komer-Jones Decl., ¶13.

Plaintiff—the Outside Sales Exemption and the Executive Exemption.[6]

As Plaintiff and the opt-in plaintiffs acknowledged, Great Plains MLOs' primary duty is selling financial products in the form of mortgage products to customers. [Doc. No. 19-1, Exhibits A-G]. Furthermore, many (but not all) of the putative class members, and Plaintiff himself, customarily and regularly engage or engaged in sales-related activities away from the place of business. Ex. A, Dean Decl., ¶9. Even among the putative class members identified, the time spent outside of the office in sales-related activities varies from almost none to 90% of an MLO's time spent on such activities. Ex D, Barnes Decl., ¶6; Ex. E, Gray Decl., ¶10; Ex. A, Dean Decl., ¶7. Any material distinctions in the amount of time spent performing activities outside the office will require individualized inquiries for each of the putative class members in order to determine whether the Outside Sales Exemption applies. *See Lagos v. Cogent Communications, Inc.*, 2014 U.S. Dist. LEXIS 161464, at *22-23 (S.D. Tex. March 12, 2014) (decertifying class because of the individualized inquiries required to apply the outside sales exemption, and explaining that "[e]ven small variations in the time spent outside the office can determine whether an employee is exempt or not under the outside sales exemption"); *Harris*, 2006 U.S. Dist. LEXIS 51437, at *11 (holding the different classifications and varying job duties would require Defendants to present a highly individualized defense for each plaintiff's claims.).

The application of the Executive Exemption requires an equally individualized analysis. Plaintiff and some putative class members (but certainly not all) supervise(d) other employees.

---

[6] To qualify for the Outside Sales Exemption: (1) the employee's primary duty must be making sales; and (2) in performing the primary duty, the employee must be customarily and regularly engaged away from the employer's place of business. 29 C.F.R. § 541.500(a). To qualify for the Executive Exemption, employees working in a bona fide executive capacity are those (1) who are compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who have the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

Because some, but not all, members of the putative class may qualify for the Executive Exemption, individualized inquiries will be required to determine whether each and every putative class member qualifies for the exemption.

That these sorts of individualized inquiries are crippling to the certification of a collective action is more than mere speculation – courts routinely decline to certify collective actions, even under a first stage analysis, where the necessity of individualized inquiries becomes apparent.[7] *See Aguirre v. SBC Commc'ns, Inc.*, No. H-05-3198, 2007 U.S. Dist. LEXIS 17259, at *43 (S.D. Tex. Mar. 12, 2007) (holding "[g]iven the fact-intensive nature of the exemption analysis, the plaintiffs have not shown that they are similarly situated so as to make collective treatment of their claims proper under section 216(b) of the FLSA"). In "misclassification cases" in which the employer has the burden to prove that a particular exemption applies, the regulations state that this issue is not to be resolved categorically, but individually. *See* 29 C.F.R. § 541.2 An employer may establish that a given employee's job duties qualify for an exemption although another employee with the same job title may perform duties that are determined to be non-exempt. *Id*. Consequently, an employer should not be compelled to prove its claimed exemption in an across-the-board manner, but should have its evidence considered with respect to each employee, because the strength of that evidence may differ in each instance and the regulations state this issue is not to be resolved categorically, but individually. *Id*.

## V. CONCLUSION

Plaintiff offers seven (including Plaintiff Stier's) cookie cutter statements, and on that basis asks this Court to certify a class of individuals employed in 10 different states at multiple

---

[7] *See Reich v. Homier Distrib. Co., Inc.*, 362 F. Supp. 2d 1009, 1013-15 (N.D. Ind. 2005) (denying motion for conditional certification because plaintiff and potential class members were not similarly situated, as application of FLSA exemption would depend on each employee's specific duties); *Safeco Ins. Co. of Am.*, 274 F. Supp. 2d at 220-21 (holding plaintiff failed to make adequate showing that "questions common to a potential group of plaintiffs would predominate a determination of the merits in the case," because merits of plaintiffs' claim would require factual analysis of their individual day-to-day work functions).

locations.  Plaintiff failed to establish a common policy or practice that applies to all putative class members and Plaintiff is not similarly situated to the opt-in Plaintiffs, much less the putative class members.  Great Plains Mortgage Loan Officers, who are not subjected to the same pay practices, perform widely divergent duties at divergent locations for widely varying amounts of time outside of the sales office and under the supervision of different supervisors.  These differences among the proposed putative class are significant; as such, determining the proper FLSA status of each employee and whether each employee worked off-the-clock would necessitate a fact-specific analysis of each individual's employment terms.  Such an individualized analysis makes collective action inappropriate and unmanageable.

Dated October 8, 2015               Respectfully submitted,

/s/ Saba H. Alvi
Kimberly R. Miers
State Bar No. 24041482
Jeremy W. Hawpe
State Bar No. 24046041
Saba H. Alvi
State Bar No. 24082324

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX  75201.2931
214.880.8100 (Telephone)
214.880.0181 (Telecopier)
kmiers@littler.com
jhawpe@littler.com
salvi@littler.com

ATTORNEYS FOR DEFENDANT
GREAT PLAINS NATIONAL BANK

## CERTIFICATE OF SERVICE

    I hereby certify that on the 8th day of October, 2015, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, Sherman Division, using the electronic case filing system of the court.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system as follows:

        Brendon J. Donelon
        Donelon, P.C.
        420 Nichols Road, Suite 200
        Kansas City, MO  64112
        brendan@donelonpc.com

        */s/ Saba H. Alvi*
        Kimberly R. Miers
        Jeremy W. Hawpe
        Saba H. Alvi

Firmwide:136092403.4 085867.1001